NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

PAUL MERKLEY, *Petitioner/Appellant,*

*v.*

MICHELLE A. MERKLEY, *Respondent/Appellee.*

No. 1 CA-CV 25-0515 FC

FILED 02-26-2026

Appeal from the Superior Court in Yuma County
No. S1400D0201101172
The Honorable Mark W. Reeves, Judge

**AFFIRMED**

COUNSEL

Stanley David Murray Attorney at Law, Scottsdale
By Stanley D. Murray
*Counsel for Petitioner/Appellant*

Popp Law Firm, PLC, Tempe
By James S. Osborn Popp
*Counsel for Respondent/Appellee*

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Michael S. Catlett and Judge Jennifer M. Perkins joined.

**P A T O N**, Judge:

¶1        Paul Merkley ("Husband") appeals a Court Order Acceptable for Processing Re: Federal Employees Retirement System ("COAP") and the denial of his motion to alter or amend the COAP's terms.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Husband and Michelle Merkley ("Wife") married in January 1995.  Husband served Wife a petition for dissolution on November 2, 2011, and they divorced pursuant to a default decree, which Husband filed and the court entered on January 30, 2012.

¶3        Husband has participated in the Federal Employee Retirement System ("FERS") since August 11, 2002.  The decree provided that:

> Wife shall receive one-half of the community's interest in Husband's FERS pension plan, said interest commencing as of August 11, 2002[,] and terminating as of November 2, 2011. The remaining portions of the FERS pension plan are awarded to Husband free and clear of any claim, title and interest of Wife, including the right to be named as the former spouse survivor annuitant.

¶4        At the time of dissolution, Husband was not yet eligible for retirement.  Instead of valuing and dividing the community's interest in the pension plan at that time, the decree "reserve[d] [the court's] jurisdiction to resolve any issues pertaining to the division of the FERS pension plan."

¶5        Husband applied for retirement in January 2025, a few months before his mandatory retirement at age 57.  Shortly before he applied, Wife prepared a proposed COAP so she could receive her share of the pension payments.  Husband refused to stipulate to her proposed

COAP, so Wife petitioned the court for post-decree relief, asking it to enter her proposed COAP.

¶6 Wife's proposed COAP awarded her a pro-rata share of the value of Husband's benefits at the time of his retirement, which included increases in value due to his continued employment after their divorce, as well as a share of the cost of living adjustments. It also provided that her share of the benefits would be payable to her estate if she predeceased Husband (the "payable-to-the-estate provision"). Finally, it awarded her a share of the plan's "FERS Annuity Supplement."

¶7 Husband argued in response that Wife's proposed COAP was inconsistent with the decree's language and violated federal law prohibiting the division of social security benefits. He submitted his own proposed COAP.

¶8 After hearing from both parties at a resolution management conference, the court entered a COAP adopting Wife's proposed provisions. Husband unsuccessfully moved to alter or amend the order. Husband timely appealed the COAP and denial of his motion. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") Section 12-2101(A)(2).

## DISCUSSION

### I. The superior court did not err in awarding Wife a share of the benefits valued as of Husband's retirement.

¶9 Husband first argues that the decree provided that Wife's interest in the FERS benefits "terminat[ed] as of November 2, 2011," so Wife was entitled only to a share of the benefits' value as of that date. And any increases due to his post-dissolution employment or cost of living adjustments were "remaining portions of the FERS pension plan" that the decree awarded to him "free and clear."

¶10 We review the superior court's interpretation of a dissolution decree de novo. *Cohen v. Frey*, 215 Ariz. 62, 66, ¶ 10 (App. 2007).

¶11 Pension benefits earned by the community effort of a spouse during marriage are subject to equitable division. *Van Loan v. Van Loan*, 116 Ariz. 272, 273-274 (1977). The community's interest in a pension plan is an interest in the value of the matured benefits—even if the value increases after dissolution. *See Cooper v. Cooper*, 167 Ariz. 482, 490 (App. 1990).

**¶12**　　　　At the time of dissolution, Husband's pension had not yet matured. *Johnson v. Johnson*, 131 Ariz. 38, 41, n. 2 (1981) (unmatured pension right is one that does not confer an unconditional right to immediate payment of normal retirement benefits). Our supreme court has approved two methods of apportioning unmatured benefits in a pension plan: the reserved jurisdiction method and the present cash value method. *Hetherington v. Hetherington*, 220 Ariz. 16, 19, ¶ 9 (App. 2008). Husband does not contest the superior court's use of the reserved jurisdiction method, provided for in the default decree that he proposed.

**¶13**　　　　Under the reserved jurisdiction method, the court calculates each spouse's share of pension benefits when the employee spouse retires, using a calculation known as the time formula. *Cooper*, 167 Ariz. at 490. First, the court calculates the community share "by dividing the length of time worked during the marriage by the total length of time worked toward earning the pension." *Johnson*, 131 Ariz. at 41, n. 4. Each pension payment is then multiplied by that figure to determine the portion of the payment constituting community property, which is then divided between the spouses. *Id.* at n. 5. The actual division of pension payments occurs "if, as, and when" the pension is paid out, *id.* at 41, but the non-employee spouse "receives an immediate, present, and vested separate property interest" in his or her share as soon as dissolution occurs. *Koelsch v. Koelsch*, 148 Ariz. 176, 181 (1986).

**¶14**　　　　We have approved the reserved jurisdiction method and time formula. *See Boncoskey v. Boncoskey*, 216 Ariz. 448, 453, ¶ 21 (App. 2007). We have decided that when the "number of years served by the employee spouse is a substantial factor" in determining the benefits such employee will receive, "the community is entitled to have its share based upon length of service performed on behalf of the community in proportion to the total length of service necessary to earn those benefits." *Cooper*, 167 Ariz. at 490. Indeed, either apportionment method entitles the non-employee spouse to a share of the pension benefits valued at maturity; under the present value approach, the value of benefits at the time of expected retirement is simply determined actuarily at the time of dissolution. *See Koelsch*, 148 Ariz. at 184 (under the present value approach, "the community property portion of the retirement benefit would be calculated by multiplying the lump sum present value of the pension plan *at the date of maturity*" (emphasis added)).

**¶15**　　　　A non-employee spouse is also entitled to any increase in his or her share of pension benefits due to cost of living adjustments because this increase is due to the "inherent quality" of the pension plan, rather than the employee spouse's post-dissolution efforts. *Koelsch*, 148 Ariz. at 184, n.

9 ("[A]ny benefits due to the inherent quality of the pension plan," such as a "statutorily authorized cost of living increase," is community property).

**¶16**        The amount of Husband's pension benefits depends on his salary and years of service.  Because Husband's years of service is a substantial factor in determining his monthly benefit under his pension plan, Wife is entitled to a share "based upon length of service performed on behalf of the community in proportion to the total length of service necessary to earn those benefits."  *Cooper*, 167 Ariz. at 490.  And his pension plan includes statutorily mandated cost of living adjustments, so the adjustments are an "inherent quality" of the pension plan that Wife is entitled to share in.  5 U.S.C. § 8462(b)(1); *see Koelsch*, 148 Ariz. at 184, n. 9.

**¶17**        Husband cites a single out-of-state case to support his argument that the community interest in the pension plan should be valued as of the date of dissolution using a calculation that he calls the "frozen benefit" method.  *See Casner v. Casner*, 126 N.E.3d 302 (Ohio 2018).  But Husband's proposed "frozen benefit" formula is not supported by the language in the decree nor any Arizona case law.  *See Carrion v. Carrion*, 1 CA-CV 22-0135 FC, 2022 WL 4372977, at **4-5, ¶¶ 25-26 (Ariz. App. Sept. 22, 2022) (mem. decision) ("Husband's requests to apply a frozen benefit formula . . . are not supported by . . . Arizona law."); *Cohen*, 215 Ariz. at 67, ¶ 14 (a decree's language is construed in the context of established community property law).

**¶18**        Husband also points to a separate provision in the decree, which awards Wife $18,000 of his Thrift Savings Plan, to support his contention that the decree intended to award Wife "frozen benefits."  His argument is unavailing.  Husband drafted the default decree.  The value of his pension benefits at the time of dissolution could have been calculated at that time.  If anything, his use of a flat sum to divide his Thrift Savings Plan demonstrates that he could have done the same for his FERS pension plan but chose not to.

**¶19**        Wife's share of the community's interest in the FERS pension plan became her separate property as of the dissolution date.  She is entitled to the increases in its value due to Husband's continued employment and the cost of living adjustments.

## II.    The superior court did not modify the decree by including the payable-to-the-estate clause.

**¶20**        Husband next argues the decree did not expressly provide Wife the right to direct pension payments to her estate, so the court

impermissibly modified the decree by including the payable-to-the-estate provision in its order.

**¶21**        Wife's right to direct her share of the pension benefits to her estate is not a separate FERS benefit, but a right inherent to ownership of separate property. *See Stock v. Stock*, 250 Ariz. 352, 354, ¶ 7 (App. 2020). Upon dissolution, a former spouse's share of pension benefits becomes his or her "immediate, present, and vested separate property interest." *Koelsch*, 148 Ariz. at 181. And a spouse has the right to control his or her separate property, including how it is to be disposed upon death. *See Stock v. Stock*, 250 Ariz. 352, 354, ¶ 7 (App. 2020).

**¶22**        By awarding her a share of the benefits, the decree awarded her all the rights intrinsic to the ownership of separate property, including the right to dispose of it upon her death. *See id.*

### III.    The superior court did not err in awarding Wife a portion of the FERS annuity supplement.

**¶23**        Husband next contends that the FERS annuity supplement was "intended to replicate" his social security benefits because his position required him to retire before he was eligible to receive them. Therefore, he argues, the COAP violated federal law prohibiting the division of social security benefits by awarding Wife a share of the annuity supplement. He further argues the decree did not expressly provide Wife with the right to the annuity supplement.

**¶24**        We review the application of statutes de novo. *Thomas v. Thomas*, 203 Ariz. 34, 36, ¶ 7 (App. 2002).

**¶25**        An individual becomes eligible to receive social security retirement benefits upon turning 62 years old. 42 U.S.C. § 402(a)(2). Therefore, certain federal employees who are required to retire before age 62 are entitled to receive the FERS "annuity supplement," which provides monthly payments equal to what they would receive from social security between their mandatory retirement age and when they turn 62 years old. 5 U.S.C. § 8421.

**¶26**        Social security benefits may not be divided by state courts upon dissolution pursuant to Section 407(a) of the Social Security Act. 42 U.S.C. § 407(a); *Kelly v. Kelly*, 198 Ariz. 307, 308, ¶ 5 (2000), *as amended* (Oct. 11, 2000). But this prohibition applies only to payments under subchapter II of the Social Security Act. 42 U.S.C. § 407(a) ("The right of any person to

any future payment *under this subchapter* shall not be transferable or assignable." (emphasis added)).

¶27   The FERS annuity supplement was created by the Federal Employees' Retirement System Act ("FERSA") — not the Social Security Act. FERSA expressly provides that "payments under this chapter," which include both the basic annuity and the annuity supplement, may be paid to a former spouse pursuant to "any court decree of divorce." 5 U.S.C. § 8467; *see also* § 8421(c) (clarifying that the annuity supplement "shall, for purposes of [S]ection 8467, be treated in the same way as" the basic annuity).

¶28   Section 407(a) of the Social Security Act does not prohibit the division of Husband's FERS annuity supplement. Husband admits the FERS annuity supplement may be divided if expressly provided for in a court order, which the COAP did. The decree did not need to specifically mention the annuity supplement because it apportioned each spouse half of the community's interest in Husband's "FERS pension plan," which includes the annuity supplement. Awarding Wife the supplement to her interest in the annuity itself is consistent with both the language of the decree and federal law.

¶29   Finally, Husband claims the superior court erred in denying his motion to alter or amend because the COAP was contrary to law and unsupported by the evidence. For the reasons explained above, none of the COAP provisions that Husband challenges were erroneous. The court did not err in denying his motion.

¶30   Both parties request attorneys' fees. Husband requests fees under Section 25-324. Wife failed to cite any authority to support her request, as required by Arizona Rule of Civil Appellate Procedure ("ARCAP") 21(a)(2). In the exercise of our discretion, we decline both parties' requests. As the prevailing party, Wife is entitled to her costs on appeal upon compliance with ARCAP 21(b).

**CONCLUSION**

¶31   We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:   JR